UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
_____ DIVISION

Antoinette C. Taylor
_____

NAME OF PLAINTIFF(s)

v.

Case No. 3:04CV-213-R

The Center for Women and Families
Dale Herink
_____

NAME OF DEFENDANT(s)

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. section 2000e-5. Equitable and other relief are also sought under 42 U.S.C. section 2000e-5(g).

2. Plaintiff, Antoinette C. Taylor is a citizen of the United States and resides at 1827 Oakwood Drive
address
Shelbyville, Shelby, Kentucky
city                county        state
40065, 502-418-2675.
zip code   telephone number

(If more than one plaintiff, provide the same information for each plaintiff below)

3. Defendant, **The Center for Women And Families**, lives at, or is business is located at **226 West Breckinridge Street**,
street address

**Louisville**, **Jefferson**, **Kentucky**,
city — county — state

**40201-2048**.
zip code

(if more than one defendant, provide the same information for each defendant below)

Dale Herink, 226 West Breckinridge Street, Louisville, Jefferson, Kentucky 40201-2048

4. Plaintiff sought employment from the defendant or was employed by the defendant at **7357 Highway 44 East**, **Mt. Washington**,
street address — city

**Bullitt**, **Kentucky**, **40047**.
county — state — zip code

5. Defendant discriminated against plaintiff in the manner indicated in paragraphs 8-9 of this complaint on or about **5th**, **November**, **2003**.
day — month — year

6. Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging the defendant with the acts of discrimination indicated in paragraphs 8-9 of this complaint on or about **14th**, **November**, **2003**.
day — month — year

7. The Equal Employment Opportunity Commission or the U.S. Department of Justice issued a Notice of Right to Sue which was received by plaintiff on **30th**, **January**, **2004**, a copy of which notice is attached to this complaint.
day — month — year

8. Because of plaintiff's (1) ✓ race, (2) ✓ color, (3) ___ sex, (4) ___ religion, (5) ___ national origin, the defendant

      (a) ___ failed to employ plaintiff.

      (b) ✓ terminated plaintiff's employment.

      (c) ___ failed to promote plaintiff.

      (d) ___ retaliated against plaintiff for having filed a charge of discrimination.

      (e) ___ other: explain:_____

_____

_____

_____

9. The circumstances under which defendant discriminated against plaintiff were as follows: _See attached six pages and 25 Exhibits._

_____

_____

_____

_____

_____

_____

_____

_____

_____

(you may use additional paper, if necessary)

Antoinette C. Taylor vs. Center for Women and Families

COMPLAINT

9.     The circumstances under which defendant discriminated against plaintiff were as follows:

The Center for Women and Families (The Center) fired Antoinette C. Taylor illegally on November 5, 2003. The Center violated their Equal Employment Opportunity and Diversity policy. Antoinette charged The Center for Race Discrimination on November 14, 2003. Antoinette is an African-American woman. She was employed as a Family Advocate in the Kentucky Outreach Services which covers six counties (Bullitt, Shelby, Henry, Trimble, Oldham and Spencer). Antoinette performed all of her assigned duties. She followed The Center's employment policies and procedures.

Antoinette believed that she was intentionally discriminated and retaliated against because of her race, African-American by The Center. Dale Herink, Vice President of Human Resources/Volunteers and Darlene Thomas, Director of Kentucky Programs received her Complaint of harassment on September 26, 2003. Ms. Herink and Ms. Thomas are both Caucasian women. They failed to protect her from co-workers, namely Antoinette's supervisor Sheila Rucker. Ms. Rucker is African-American woman. Ms. Rucker tried to dig up reasons to get Antoinette discharged, see Exhibit 25 (b).

Although Jacqueline Hersh employed as a Family Advocate in the Kentucky Outreach Services filed a harassment complaint against the Sheriffs in the Oldham County's office. Ms. Hersh is a Caucasian woman. Ms. Hersh's situation is similar to Antoinette. Not only had Ms. Hersh complained about being harassed in her work environment. Ms. Hersh was allowed to transfer to another position within The Center, see Exhibit 25 (a). Ms. Hersh faced no retaliation for filing a harassment complaint about her work environment. Ms. Hersh was not terminated from The Center either. The Center treated Antoinette differently than Ms. Hersh, because of her race, African-American. For example, Ms. Thomas and Ms. Herink assisted Ms. Hersh with her transfer to the Legal Justice Department within The Center. On the other hand, The Center denied Antoinette to transfer to another position within The Center. Instead, The Center terminated Antoinette illegally.

Antoinette fulfilled all her duties and responsibilities as a Family Advocate for The Center. Antoinette served and advocated on behalf of approximately 950 unduplicated clients, women, men, children and families who have been affected by domestic violence, sexual assault, rape and economic hardship in six counties (Bullitt, Shelby, Henry, Spencer, Trimble and Oldham) within approximately eight (8) months of employment with The Center. Antoinette worked with the largest amount of clients among the other Family Advocates based on statistics reported quarterly to the Funding vendors, such as Metro United Way. For example, Antoinette facilitated Adult Support group with at least seven to fifteen women weekly in Bullitt County, unlike the other Family Advocates. For

example, No adult/children support groups existed in Trimble and Henry counties. Antoinette provided legal advocacy with at least fifteen to twenty Emergency Protective Orders' cases weekly in Bullitt County.

Antoinette managed the Mt. Washington Office in Bullitt County five days a week and on-called in the evenings and weekend. Other staff (Annisa, Zelda, Teresa and Erica) rotated to the Mt. Washington office daily to provide crisis counseling, emergency and transitional shelter, case management, counseling, therapy, group education and support, children's services, legal and hospital advocacy, emergency assistance, and referral to Bullitt County residents, see Exhibit 17.

Antoinette received extensive public education and professional training on the topics of domestic violence and sexual/rape assault, attached is Exhibit 1. Antoinette provided direct client services to the majority of clients within the six counties already listed above.

Last year, Antoinette met the essential functions of Family Advocate. She provided 20% of case management support service to victims, both adults and children. She provided 20% non-residential counseling. She conducted 15% client intake and walk-ins counseling. She facilitated 10% support groups for non-residential clients. She provided 10% crisis intervention by phone. She provided 10% hospital and legal advocacy. She maintained 10% follow-up services to on-going clients, attached is Exhibit 2 (a-d).

Antoinette provided 20% of Community training. She attended 10% of staff meetings, agency meetings, case reviews and community meetings; participated on-call rotation schedule; completed six (6) KDVA Level 1 modules, attached is Exhibit 3 (a-e).

Antoinette complied 10% with State reporting of abuse and neglect. She provided 10% collaboration/liaison between agency, clients, community and volunteers, attached is Exhibit 4 (a-l).

Antoinette provided on-going assigned programmatic duties such as volunteer coordination, procedure manual, case evaluation, forms, filing, scheduling, client documentation, back-up duties, attached is Exhibit 5 (a-aa).

Antoinette graduated from Alabama A&M University (Huntsville, Alabama) with a Bachelor of Arts in Broadcast Journalism and Minors in Business Management and Commercial Art. She completed eighty-nine (89) credits in the Master of Divinity program both at Johnson C. Smith Seminary (Atlanta, Georgia) and the Louisville Presbyterian Seminary (Louisville, Kentucky). She completed sixty-five (65) credits in the Master of Arts in Marriage and Family Therapy program at Louisville Seminary.

Antoinette received a 'Thank you' card from a client who is a member of her Adult

Page three, Taylor
April 1, 2004

Women's group on Tuesday evening from 5:30 p.m. to 7:15 p.m. in Bullitt County, attached is Exhibit 6.

U.S. Equal Employment Opportunity Commission (EEOC) decided not to initially investigate the Charge against The Center reported by Marcia Hall-Craig. The Center provided their position statement to the EEOC on January 20, 2004. Now Antoinette will respond to The Center's position statement as follows:

The Center for Women and Families' (The Center) made false statements knowingly in their response to the EEOC. The Center misstated the facts inaccurately and unfairly, attached is Exhibit 7.

The Center claimed that Antoinette started working for The Center on February 24, 2004. This is not true. Antoinette was hired on February 18, 2003, attached is Exhibit 8. They claimed that Antoinette changed her work schedule to take a class in spring 2003. That is not true. Antoinette's supervisor Sheila Rucker approved schedule change to take course. Ms. Rucker approved also Erica Taylor's work schedule change which they took that same course at Louisville Seminary, attached is Exhibit 9. Antoinette told Ms. Rucker that she had courses and practicum hours left to complete the Marriage and Family Therapy program at Louisville Seminary.

It is true that Antoinette received an Employee Performance Evaluation Form on April 28, 2003, attached is Exhibit 10. Antoinette received very high ratings from Ms. Rucker. Ms. Rucker outlined Antoinette's goals to be completed within one (1) year during next review period. Prior to that year, Antoinette completed 95% of her goals, attached are Exhibit 11 (a-c). Antoinette completed 100% of goals listed on job description and October and November 2003's schedule, attached is Exhibit 12 (a-b).

It is not true that Ms. Rucker followed up on goals in August, attached is Exhibit 13 (a-c). Ms. Rucker wrote a note requesting Antoinette to write out measurable times on monthly reports. Antoinette turned in measurable goals upon Ms. Rucker's request.

Antoinette attended all scheduled meetings in Bullitt County. It is true that Antoinette asked other Family Advocates or staff to attend meetings when she had other responsibilities, attached is Exhibit 14 (a-m).

The Center claimed that Antoinette was having difficulties with absenteeism, maintaining regular office hours and attending scheduled events. This is a lie. Antoinette maintained work schedule hours. Antoinette's supervisor, Ms. Rucker approved all of her off days, attached is Exhibit 15. Antoinette turned in all doctors' excuses directly to Ms. Rucker. Antoinette had fifty (50) hours of vacation time and forty-eight (48) hours of sick time at that time, attached is Exhibit 16. It is not true. Antoinette missed no days of work in

Page four, Taylor
April 1, 2004

June and July because of various doctor's appointments. It is true that Antoinette notified her supervisor, Ms. Rucker that she was ill that morning on September 5, 2003. Antoinette made a doctor's appointment for that afternoon during her lunch period. Ms. Rucker approved Antoinette's leave to the doctor's office. That is true. Antoinette provided a doctor's notice for September 8, 9, and 18 because she was very ill.

It is a lie. Antoinette was not the only Center employee in Bullitt County. Antoinette served as part of the Kentucky Outreach Services which included six counties (Bullitt, Shelby, Trimble, Henry, and Spencer). Each Family Advocate was assigned a day to work in the Bullitt's office since Antoinette started working in the Mt. Washington Office in Bullitt County, attached is Exhibit 17. It is true that the Bullitt County has the most clients than the other five- (5) counties listed. For example, Teresa worked on Tuesday. Zelda Alderson worked on Thursday. Erica worked on Fridays. Carolyn worked on Mondays. These Advocates covered the Mt. Washington Office because there were more clients in Bullitt County. They answered the telephone, facilitated children and adult support groups, and attended court session and community events. Antoinette covered Emergency Protection Order (EPO) court at Bullitt courthouse. She facilitated both Spencer and Bullitt counties Adult Domestic Violence/Rape Assault groups weekly. Antoinette planned community events. She attended community meetings. It is true that Antoinette covered several children and adult domestic violence in the other counties, when other Family Advocates are absence. Other Family Advocates supported Antoinette, as well in her absence, attached is Exhibit 18.

On September 22, 2003 at 9:00 a.m. Antoinette was called into an unannounced Supervision Meeting arranged by Ms. Rucker, attached is Exhibit 19. During that meeting Dale Herink, Vice-President of Human Resources/Volunteers of The Center for Women and Families recommended that Ms. Rucker share her concerns with all the other Family Advocates instead of only with Antoinette. Ms. Rucker shared her concerns with the other Family Advocates on September 24, 2003, attached is Exhibit 20.

Antoinette reported having the highest statistics. She worked with the most clients within the other five- (5) counties listed. Antoinette worked with walk-ins, answered crisis-calls, and counseled in the office daily. The Center claimed in order to assist Antoinette to perform her duties, The Center agreed to schedule other Family Advocates to rotate to the Bullitt County office to provide assistance to Antoinette. This is a lie. The Family Advocates covered the office while Antoinette attended court twice weekly. Antoinette performed her own responsibilities. The other Family Advocates served fewer clients than Antoinette. Antoinette served the largest population of clients than the other Family Advocates within the six counties. The Center reported statistics to the Metro Way and other Funding agencies as requested to do so.


Page five, Taylor
April 1, 2004

On September 21, 2003 Antoinette requested two (2) vacation days off for October 9 and 10, 2003 in advance. Antoinette reported having fifty (50) hours of vacation days and forty-eight (48) hours of sick days see Exhibit 16. Ms. Rucker retaliated against Antoinette and denied her vacation request for two days. Ms. Rucker refused to provide a reason for her decision at that time. Ms. Rucker made up reasons and later faxed it to Antoinette. Antoinette said that she had not discussed any of those reasons with Ms. Rucker. Ms. Rucker tried to cover up for her mistake. Ms. Rucker approved the other Family Advocates' vacation days without hesitation about coverage, unlike the way she treated Antoinette, attached is Exhibit 21.

This is not true. Antoinette shared no information with Ms. Rucker about being harassed by her. Darlene Thomas broke confidentiality when she showed Antoinette's harassment complaint to Ms. Rucker. Antoinette mailed harassment complaint directly to Ms. Thomas and Ms. Herink, attached is Exhibit 22. Ms. Rucker harassed Antoinette after she took sick days from September 5-9, 2003. This harassment started on September 10, 2003 at 9:30 a.m., see Exhibit 19. It is true that this incident was based on harassment in the work place. For example, Jacqueline Hersh reported harassment in her work place. Both Ms. Herink and Ms. Thomas decided to transfer Ms. Hersh to another position in The Center because she is white. On the other hand, Ms. Thomas and Ms. Herink planned to terminate Antoinette because she is black. Ms. Herink made the decision to discharge Antoinette. Ms. Herink used Ms. Rucker as a cover up because she is black as well. The Center employed 1% of blacks only because of funding purposes. Antoinette reported no blacks in management positions within The Center.

Antoinette performed all assigned duties. Antoinette turned in monthly reports to Ms. Rucker. Ms. Rucker accepted monthly reports always without any concerns. These reports listed meetings attended and presentation completed. Ms. Rucker failed to assist Antoinette with group coverage when other Family Advocates were not available.

On October 24, 2003 Antoinette contacted Donna LaFountain, The Principal of Nichols Elementary School in Bullitt County to check for the time and location for to attend the free public Nichols Site Base Council Meeting listed in the Pioneer Newspaper, see Exhibit 23. Ms. LaFountain reported that The Council Meeting would be held on October 29, 2003 at 4:00 p.m. instead of that day Antoinette called. On October 29, 2003 Antoinette attended The Council Meeting. One of the Council members gave Antoinette a copy of the Council's Meeting Agenda, attached is Exhibit 23. Ms. LaFountain introduced Antoinette to the other council members. Antoinette told Ms. LaFountain that she would not stay for the entire meeting. The Council Meeting was scheduled from 4:00 p.m. until 7 p.m. Antoinette ended working hours at 5:00 p.m. on Wednesday. That is a lie. Antoinette missed no group sessions on that day she attended the Council Meeting.

Page six, Taylor
April 1, 2004

On November 5, 2003 The Center fired Antoinette because of her race, African-American. The Center violated their Equal Employment Opportunity and Diversity policy. The Center attempted to cover up the race discrimination by complaining about her work performance. The Center claimed that Antoinette had not fulfilled her duties and behaved bizarre at the school site-based council meeting on October 29, 2003. They made false statements in their position statement to the EEOC in order to cover up for breaking the law. They used Antoinette's work performance as a pretense, see Exhibit 10. Ms. Rucker completed a corrective action report after The Center fired Antoinette. Ms. Rucker made false statements throughout that report, attached is Exhibit 24. Antoinette received no correction action reports prior to being discharged. The Center violated their own Standard of Conduct and Correction Action policy. Attached is Exhibit 25 (a-c) with other supported documentations.

*[signature]*
4/1/04

10. The acts set forth in paragraph 8 of this complaint

    (a) \_\_\_\_ are still being committed by defendant.

    (b) ✓ are no longer being committed by defendant.

    (c) \_\_\_\_ may still be being committed by defendant.

11. Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission, which charges are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

    (a) \_\_\_\_ defendant be directed to employ plaintiff, or

    (b) \_\_\_\_ defendant be directed to re-employ plaintiff, or

    (c) \_\_\_\_ defendant be directed to promote plaintiff, or

    (d) ✓ defendant be directed to pay $6,305.94 (back pay - 6 mths); $442.44 (Health + Dental benefits); $15,500 (compensatory damage) $10,000 (punitive damage). The total amount paid by defendant $32,248.38

and that the Court grant such other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

12. Trial by jury ✓ yes \_\_\_\_ no.

*Antoinette C. Taylor*

_____
_____
(signature of plaintiff (s))